THE   UNITED   STATES   DISTRICT   COURT   FOR   THE

SOUTHERN   DISTRICT   OF   OHIO   (COLUMBUS   DIVISION)

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Billy G. Asemani
ECI-E/#359-096
30420 Revells Neck Road
Westover, Maryland  21890

**2  21CV4098**

v.

CIVIL ACTION NO.:●●●

Special Master
U.S. Victims of State Sponsored Terrorism Fund
5151 Blazer Parkway, Suite A
Dublin, OH  43017

Judge Sargus

**MAGISTRATE JUDGE JOLSON**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

PRO   SE   COMPLAINT/PETITION

PURSUANT   TO:

(1)

Title 28, U.S. Code, Section 1331

(FEDERAL   QUESTION   JURISDICTION);

(2)

Title 28, U.S. Code, Section 2201

(DECLARATORY   JUDGMENTS   ACT);

(3)

Title 28, U.S. Code, Section 1631

(WRIT   OF   MANDAMUS);

AND

SWORN   AFFIDAVIT   IN   SUPPORT   THEREOF

## TABLE OF CONTENTS

| | Page(s) |
|---|---|
| PRELIMINARY PRO SE STATEMENT | 1-2 |
| VENUE | 3 |
| FACTUAL BACKGROUND AND PROCEDURAL HISTORY | 4-11 |
| THE COURT'S SUBJECT-MATTER JURISDICTION | 12 |
| FEDERAL QUESTION JURISDICTION | 13 |
| DECLARATORY JUDGMENTS ACT | 14 |
| WRIT OF MANDAMUS | 15 |
| AN INSTRUCTIVE CASE | 16-17 |
| DISCUSSION / ARGUMENT | 18-22 |
| RELIEF SOUGHT | 23 |
| SWORN AFFIDAVIT | 23 |
| EXHIBITS A, B, & C | N/A |

<u>PRELIMINARY PRO SE STATEMENT</u>

The U.S. Supreme Court has only required that this complaint include "a short and plain statement of the claim showing that [plaintiff Asemani] is entitled to relief." <u>Leatherman v. Terrant</u>, 507 U.S. 163 (1993). Furthermore, Asemani respectfully requests of the Honorable Court to construe his complaint liberally and to cure all procedural errors as adjudged by the Supreme Court in <u>Haines v. Kerner</u>, 404 U.S. 519 (1972); <u>see also  Love v. Pullman</u>, 404 U.S. 522 (1972)("[t]echnicalities are particularly inappropriate in a statutory scheme in which laymen, unassisted by trained lawyers, initiate the process.").

The High Court has unanimously held, in <u>Haines, supra</u>, that a pro se complaint, "however inartfully pleaded," can only be dismissed if it appears "beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief."

"[C]ourts traditionally view [pro se] complaints [] with special judicial solicitude." <u>Weller v. Dept. of Social Services</u>, 901 F.2d 387 (4th Cir. 1990). "A pro se complaint should be viewed through the forgiving lens applicable to pro se pleadings." <u>Mitchell v. B.O.P.</u>, 587 F.3d 415 (D.C. Cir. 2009).

"A pro se complaint should be deemed sufficient if it provides reasonable notice of the theories presented.  This lenity in pleading review is especially important as applied to an incarcerated, pro se litigant whose access to the courts is narrowly circumscribed." Conley v. Gibson, 355 U.S. 41 (1957).

Asemani also respectfully urges the Court to apply the standards in Burgos v. Hopkins, 4 F.3d 787 (2d Cir. 1994)("[p]ro se papers should be interpreted to raise the strongest arguments that they suggest." See also  Setelle v. Gamble, 429 U.S. 97 (1976) ("Pro se plaintiffs are held to less stringent standards than formal pleadings drafted by lawyers.").

VENUE

Title 28, U.S. Code, Section 1391 ("Venue generally") provides;
in pertinent part:

> "A civil action may be brought in -- []
>   a judicial district [] in which any
>   defendant is subject to the court's
>   personal jurisdiction with respect
>            to such action."

Defendant/respondent Special Master "is subject to the court's
personal jurisdiction with respect to [this] action."  Accordingly,
venue is proper in this judicial district.

-3-

FACTUAL  BACKGROUND  AND  PROCEDURAL  HISTORY

Title 28, U.S. Code 1605A ("Terrorism Exception to the Jurisdictional
Immunity of a Foreign State"), as amended/updated by the "National
Defense Authorization Act of 2008," states; in part:


"A foreign state shall not be immune from the jurisdiction

of courts of the United States  OR OF THE STATES

in any case [] in which money damages are sought against

a foreign state for personal injury [] that was caused by an

act of torture[.]"  (Emphasis added.)


See also  Markazi v. Peterson, U.S. WL 1574580 (2016)("The FSIA
[Foreign Sovereign Immunities Act] provides the sole basis for
obtaining jurisdiction over a foreign state IN THE COURTS OF THIS
COUNTRY."); Walker v. Congo, 415 F.3d 413 (5th Cir. 2005)("[T]he
FSIA sets forth the sole and exclusive standards to be used to
resolve all sovereign immunity issues raised IN FEDERAL AND STATE
COURTS.");  see analogously  Southern... v. Robinson, 675 F.2d 94
(5th Cir. 1982)("[F]ederal jurisdiction over §1983 claims is not
exclusive, but is concurrent, and state action can be brought
under §1983.").

Premised on the congressional intent, that actions against foreign states (specifically, a Section 1605A complaint for torture) may be brought in state-courts, in 2010, Asemani commenced such proceeding in the Circuit Court of Maryland for Allegany County, which, in 2016, culminated in a $4,000,000.00 compensatory judgment against the Islamic Republic of Iran.  See  Exhibit A.

Exhibit B comprises of the pleading-portion of "PLAINTIFF'S PRE-TRIAL STATEMENT" (in said case).  Under "JURISDICTION," in that pleading, Title 28, U.S. Code §1605A was explicitly cited as the source of such jurisdiction.

Exhibit C is a copy of Title 34, U.S. Code §20144 ("Justice for United States Victims of State Sponsored Terrorism Act"), which was enacted on December 18, 2015, five years after Asemani's initiation of his state-court case, and a few months prior to his obtainment of the judgment against Iran.

Said statute (§20144) limited its reach only to claims (such as Asemani's) "arising from acts [] under section 1605A[.]" Id. Moreover, §20144 narrowed its applicability to judgments "issued by a United States district court [] against a state sponsor of terrorism[,]" making no mention of the fact that FSIA allows §1605A actions to be brought in both federal and state courts. By doing so, Congress made state-court §1605A judgments, without refering to the same, ineligible for compensation from the Fund.

Whether such provision (excluding state-court §1605A judgments from §20144) is constitutional or not is <u>NOT</u> the focus of the instant complaint. However, it is noteworthy that (forseeing potential constitutional conflicts, with respect to §20144 as a whole), the "Severability" subsection of §20144 holds that

> "[t]he provisions of this section are severable.
> If any provision of this section, <u>OR ANY APPLICATION THEREOF,</u>
> is found unconstitutional, that finding shall not affect any
> provision or application of this section not so adjudicated."
> (Emphasis added.)

For the sake of Asemani's claim(s) within this complaint's context, he will make no arguments against the constitutional validity of any portion of §20144. Both him and the Special Master should be bound to every reasonable interpretation of said statute. <u>See</u> <u>FCC v. Beach Comms, Inc.</u>, 508 U.S. 307 (1993)("[A] legislative choice is not subject to courtroom fact-finding[, and] the courts [are not in a position] to judge the wisdom, fairness, or logic of the legislative choices.").

It is the "or any application thereof" language in the abovecited severability subsection of §20144 that this complaint is about. As it will be expounded upon shortly, Asemani's grievance is with how the Special Master is impermissibly applying a particular provision of §20144; thus, prospectively, disqualifying Asemani's §1605A judgment from compensation from the Fund.

-6-

Subsequent to securing the §1605A judgment from state-court, Asemani applied to the Special Master/Fund for compensation. Justifiably, though, his claim was denied, because the judgment in question was not issued by a U.S. district court, as is demanded by §20144.

Another provision in §20144 dictates that "the Special Master's decision[, respecting denial of an application to the Fund] is final and nonreviewable." Id. Asemani has no qualms with that clause either. The present case is NOT a request to review the Special Master's declaration that Asemani's state-court judgment did not qualify for compensation.

Searching for a path to "federalize" his §1605A state-court judgment, in order to bring it into compliance with §20144's "U.S. district court" requirement, Asemani, literally, spent hundreds of hours conducting legal research (since 2016, to the best of his pro se abilities) until he came across GE Betz v. Zee, 718 F.3d 615 (7th Cir. 2013). He stumbled upon Betz, indirectly, while reviewing Caballero v. Colombia, 945 F.3d 1270 (10th Cir. 2019)("Federal courts disagree on whether a state-court judgment may be registered in a federal district court under §1963.").

Caballero cites Betz as an example of a federal circuit court, where it is held that state-court judgments are not barred by §1963.

-7-

Consulting with Betz, supra, Asemani discovered the below
statements in said opinion:


"Although the language of §1963 is somewhat ambiguous, GE Betz's
interpretation requires reading additional words into the statute.
GE Betz insists that §1963 explicitly allows for the registration of
federal court judgments, and thus, implicitly bars the registration
of state court judgments. But we note that NEITHER THE WORD 'STATE'
        NOR THE WORD 'FEDERAL' APPEAR IN THE TEXT OF §1963."

"Thus, it is not clear that the language of §1963 refers soley to
judgments rendered by federal courts[.]  SECTION 1963 COULD HAVE
    SAID  'ONLY A JUDGMENT [] ENTERED IN ANY [] DISTRICT COURT[,]
            MAY BE REGISTERED'-BUT IT DOES NOT."

"A court has no right, in the guise of construction of an act, to
  either add words or eliminate words from the language used by
  congress. We have no right to add words into the text if §1963,
  and we certainly have no right to add a restriction that is not
  already there." Id. (Emphasis added--Internal citations omitted.)


Armed with that knowledge, and the 7th Circuit's position (in Betz)
on how a state-court judgment could be converted into a federal
judgment, Asemani submitted a "PRO SE PETITION TO REGISTER A STATE-
COURT JUDGMENT AND MEMORANDUM OF LAW IN SUPPORT THEREOF," to the
U.S. District Court for the Central District of Illinois (Urbana
Division), which is, of course, bound by 7th Circuit precedents.
On March 31, 2021, Asemani's §1605A state-court judgment was
registered by said court.  See  Asemani v. The Islamic Republic
of Iran, Civil Action No.:  2:21-mc-02004-CSB-EIL.

-8-

Just as different federal circuits differ in their interpretation
of §1963, they also have different opinions on what a registered
judgment entails. Therefore, Asemani reviewed all the federal
circuits' decisions on §1963 for the one circuit with the strongest
stance on the import of a registered judgment. Such exhaustive
effort led Asemani to Del Prado v. B.N. Development, 602 F.3d 660
(5th Cir. 2010). The following are verbatim excerpts from Prado,
minus the internal citations:

"[R]egistered judgments are to be given the same effect as rendered judgments[.]
Our cases concerning registered judgments also support the principal that a registered
judgment has the same effect as a rendered judgment. [U]nder the plain language
of §1963[, the plaintiff's] registration of the [] final judgment in the Northern
District of [Ill] is treated as a final judgment of the Northern District of Texas."

"We simply cannot read the plain language of the final sentence of §1963 [] any way
other than as equating registration with a new judgment-on-judgment[.] If
registration is to have the same effect as a judgment, it must mean
that and not something else. [] To restrict registration to a procedural []device[,]
would give the words of the statute a lesser status than their plain meaning and
to make registration something far inferior to a judgment on judgment."

"[R]egistering a judgment under §1963 is the functional equivalent of obtaining
a new judgment of the registering court. [] A registered judgment is equivalent
to a new federal judgment obtained by filing an independent action on the
original judgment; it has the same status as a judgment on a judgment."

"[A]rguing that a registered judgment is unenforceable for procedural reasons
is an attack on the enforceability of any registered judgment under §1963. [] Because
the Illinois registered judgment was equivalent to a new federal judgment with the
same status as a judgment on a judgment, it was also capable of being successively
registered and enforced under §1963 [.]"

Id.

-9-

. . .

"[A] registered judgment is 'entered' pursuant to FED. R. CIV. P. 58.
Upon registration in Texas, the Illinois registered judgment was filed
in the Northern District of Texas by the Clerk of Court. It was then
given a docket number by the Clerk of Court for the Northern District
of Texas. Thereafter, The Illinois judgment was indexed in the
judgment index. As the registration procedure in the Northern District
of Texas makes clear, the same procedures are used to 'enter' a
registered judgment as are used to 'enter' a rendered judgment."

Id. Prado, supra

Relying on Prado, Asemani (on July 13, 2021) "successively registered"
his Illinois registered judgment (cited earlier) in the U.S. District
Court for the Northern District of Texas (Lubbock Division); see
Asemani v. The Islamic Republic of Iran, Civil Action No.:
D-TXN-5-21-MC-000004-001.

The "case or controversy," which has prompted this preemptive
complaint, is the Special Master's position on §1963, which is
in head-to-head clash with Prado, and is not supported anywhere
in the text of §20144. Such controversy exists due to a July 17,
2020 correspondence that Asemani has received from the Special
Master's office (in response to his inquiry into said office's
opinion on registered judgments, as they relate to Fund eligibility).

Asemani currently does not have a pending claim before the Special
Master. Asemani has not made a claim to the Special Master for
compensation based on the newly obtained judgment from the U.S.
district court in Texas, because a certain denial of the same (based
on the 7/17/20 letter to Asemani) would be precluded from judicial review.

What follows are the exact statements that appear in the Special Master's Office's 7/17/20 letter to Asemani:

"[R]egistration of a judgment alone does not automatically convert the original judgment into an enforceable judgment in the receiving jurisdiction, even when both jurisdictions are federal courts."

"The registration of [a] state court judgment in a federal district court [] does not satisfy the [] Fund statute's requirements for a qualifying judgment."

"You must seek a federal district court judgment to qualify for the [] Fund.  Registration of a state court judgment does not substitute for the required [] final judgment [] issued by a United States district court[.]"

THE COURT'S SUBJECT-MATTER JURISDICTION

Three statutes, in concert, authorize this Honorable Court to grant
Asemani the relief he is seeking; they are:

28 U.S.C. §1331 (Federal Question Jurisdiction):

"The district courts sshall have original jurisdiction
of all civil actions arising under the Constitution,
laws, or treaties of the United States."

28 U.S.C. §2201 (Declaratory Judgments Act):

"In a case of actual controversy within its jurisdiction[,]
any court of the United States, upon the filing of an
appropriate pleading, may declare the rights and other
legal relations of any interested party seeking such
declaration, whether or not further relief is or could
be sought. Any such declaration shall have the force and
effect of a final judgment or decree and shall
be reviewable as such."

28 U.S.C. §1361:

"Action to compel an officer of the United States
to perform his duty"

"The district courts shall have original jurisdiction in the nature
of mandamus to compel an officer or employee of the United
States or any agency thereof to perform a duty owed to the plaintiff."

-12-

TITLE 28 U.S. COSE, SECTION 1331

(FEDERAL QUESTION JURISDICTION)


Not surprisingly, the 6th Circuit has had occasion to address its standards for what constitutes a "federal question," for jurisdictional purposes. In Hamdi v. Napolitano, 620 F.3d 615 (6th Cir. 2010), it held that "[a] plaintiff properly invokes §1331 jurisdiction when she pleads a colorable claim 'arising under' the Constitution or laws of the United states[, citing] Arbaugh v. Y.&H. Corp., 546 U.S. 500[] (2006).[] This requirement of substantiality or non-frivolousness of the federal question refers to whether there is any legal substance to the position the plaintiff is presenting." Id.


There is no specific statute allowing Asemani to assert the claims that he has presented in this complaint. That is exactly where §1331 is intended to provide jurisdictional coverage. See Honicker v. Hendrie, 605 F.2d 556 (6th Cir. 1979)(Section 1331 is available only in absence of specific statute authorizing review in a particular court.) See also Chase v. JP Morgan, 2012 U.S. App. LEXIS (6th Cir.):

  "In order to trigger federal-question jurisdiction under §1331, a lawsuit must
  satisfy the well-pleaded complaint rule. Under this rule, a federal question
  must appear on the face of the complaint rather than as part of a  defense."

See also  Hu. v. Holder, 335 Fed.Appx. 510 (6th Cir. 2009)("To come within our jurisdiction, a petitioner need only establish a 'colorable' constitutional question.[] To be colorable[,] the alleged violation need not be substantial, but the claim must have some possible validity.").

-13-

TITLE 28 U.S. CODE, SECTION 2201

(DECLARATORY JUDGMENTS ACT)

In National Bank of Detroit v. Wayne Oakland Bank, 252 F.2d 537
(6th Cir. 1958), the following highly-relevant (to Asemani's claims)
decision was made: "Whether rights of party are infringed by exertion
of unauthorized federal administrative power, party has standing and
is entitled to have such controversy adjudicated [by means of §2201]. Id.

See also Cornelius v. Parma, 521 F.2d 1401 (6th Cir. 1975)(Question in each case is
whether facts alleged, under all circumstances, show that there is controversy
between parties having adverse legal interests, of sufficient reality to warrant
issuance of a declaratory judgment); Northland v. Stewart, 327 F.3d 448 (6th Cir.
2003)(Exercise of declaratory judgment jurisdiction was proper; declaratory
judgment would have settled the controversy, and was not sought for improper
litigation purposes); Hein v. Freedom from Religion Found, Inc., 551 U.S. 587
(2007)(The words "case" and "controversy" limit business of federal courts
to questions presented in adversary context and in form historically viewed
as capable of resolution through judicial process.).

See especially Chase v. JP Morgan, 2012 U.S. App. LEXIS (6th Cir.):

> "In the declaratory judgment context, whether a federal question exists
> is determined by reference to a hypothetical non-declaratory suit []
> between the same parties; if a federal question would appear in
> the complaint in this hypothetical suit, federal question
> exists over the declaratory-judgment action."
> Id.

-14-

TITLE 28, U.S. CODE, SECTION 1631

(WRIT OF MANDAMUS)

The Special Master is "an officer or employee of the United States[,]" for the purposes of §1361.  This Court has the authority "in the nature of mandamus to compel [the Special Master] to perform a duty owed to" Asemani.  That duty is to allow compensation to Asemani, because he is now a holder of a §1605A judgment, issued by a U.S. district court, as required by §20144.  The Special Master has no discretion to overrule Prada, supra.

See  Bowen v. Michigan, 476 US 667 (1986):

> "We ordinarily presume that Congress intends the executive
> to obey its statutory commands and, accordingly,
> that it expects the courts to grant relief
> when an executive agency violates
> such a command."
>
> Id.

-15-

## AN INSTRUCTIVE CASE AGAINST A DIFFERENT SPECIAL MASTER
## (Colaio v. Feinberg, 262 F.Supp.2d 262 (SDNY 2003))

Just like Asemani here, the "plaintiffs [in Colaio, supra were]
not complaining about any final determinations by the Special
Master.[]  Plaintiffs' complaints concern[ed] the legality []
of the interpretive [] policies adopted by the Special Master." Id.

"Congress granted the Special Master the [] discretion [] to
evaluate claims on individualized basis to fulfill the
congressional policy of providing compensation to the [] victims[.]
[The] preliminary question posed [] is the nature and scope of
the power delegated by Congress to [] the Special Master."  Id.

"In determining whether the agency's interpretation of a statute
is lawful, courts apply the two-step Chevron analysis:  1)  If
Congress has directly spoken to the precise question at issue
in the text of the statute, the text governs; or 2)  If the
statute is silent or ambiguous with respect to the specific
issue, then the court reviews whether the agency's answer is
based on a permissible construction of the statute.[]

"Thus, a court must first decide whether the statute unambiguously
forbids the agency's interpretation, and if not, whether the
interpretation, for other reasons, exceeds the bounds of the
permissible.  [citing] Barnhart v. Walton, 535 U.S. 212 [] (2002)." Id.

-16-

"Courts may review methods used by an agency despite the existence
of statutory language prohibiting the review of agency decisions
on individual cases[,] because the jurisdictional bar applie[s]
to direct review of individual denials [] by the agency, rather
than by general collateral challenges to unconstitutional
practices and policies used by the agency in processing
applications[.]

"[A] district court may exercise jurisdiction to adjudicate
pattern-or-practice claims[,] as opposed to individual denials[.]
Claims that a statutory mandate or constitutional guarantee has
been violated, or that the Special Master has exceeded the scope
of the delegated authority, are appropriate matters for judicial
review  See [Leedom v.] Kyne, 358 U.S. (1958)."  Id.
(Internal citations omitted.)

-17-

## DISCUSSION / ARGUMENT

"[Section 1605A] imposes a single, federal standard to be applied uniformly by both state and federal courts hearing claims brought against foreign states." Verlinden v. Central Bank of Nigeria, 461 US 430. Yet, in its wisdom, when Congress enacted §20144, it left-out state-court §1605A judgments for compensation!

Not just that, Congress did not even provide a provision (in §20144), permitting state-court judgment-creditors (like Asemani), whose cases were initiated prior to the passage of §20144, to be exempt from the requirement that the only way they may be compensated is to hold a final judgment from a U.S. district court.

Despite those major setbacks, which are NOT being contested in this complaint, Asemani "ponderously traipse[d] through the 50 states, asking whether each would entertain"*his attempt at federalizing his state-court judgment.* See Mwani v. Ben Laden, 417 F.3d 1 (D.C. Cir. 2005).

"A judgment creditor may bring an action to enforce a judgment in any district court." Peterson v. Iran, 627 F.3d 1117 (9th Cir. 2010). So, Asemani did; finding Betz and Prada, supra, and legally using those precedents to turn his state-court judgment into a federal one.

-18-

"Absent congressional direction to the contrary, words in statutes
are to be construed according to their ordinary, contemporary,
common meanings." Pioneer v. Brunswick, 507 U.S. 380 (1993).

Section 20144's "ordinary, contemporary, common meaning," as it
concerns its reference to a "U.S. district court," is appropriately
left to the highest authority in any federal district; the
corresponding U.S. Court of Appeals, to decide whether a *registered*
judgment constitutes a rendered judgment by one of the district
courts under its wings.  Congress has not delegated to the Special
Master the discretion to disgree with a governing case (Prada,
supra), issued by the 5th Circuit, which answers the "district
court" question in Asemani's favor.  The Special Master cannot
invent new requirements and add them to §20144, where Congress
made no such addition.

"Our task is to give effect to the will of Congress, and where its
will has been expressed in reasonably plain terms, that langauge
must ordinarily be regarded as conclusive." Negonsott v. Samuels,
507 U.S. 99 (1993).

The Special Master may not, under any circumstance, add or subtract from the
"reasonably plain terms" of §20144.  Nowhere in said statute Congress has
decreed that irrespective of what form of U.S. district court judgment a
claimant presents for compensation, if the action was originally commenced in
state-court, then it is precluded from being a qualified claim.

See also  Hausler v. JP Morgan, 740 F.Supp.2d 525 (SDNY 2010) (Recognizing that Congress' purpose is to "deal comprehensively with the problem of enforcement of judgments rendered on behalf of victims of terrorism.").

Asemani is not asking this Court to instruct the Special Master to excuse him from what §20144 demans; he is simply requesting that the Special Master be constrained to his/her delegated authority, which does not include reading something in §20144 that is not there.

Congress has made its intention abundantly clear in §20144. The Special master cannot override such intention.  "Congress [] does not, one might say, hide elephants in mouseholes." Whitman v. Am. Trucking assocs., 531 U.S. 457 (2001).

"[S]ince the state court has already determined the FSIA [§1605A] issues, such determination has preclusive effect in federal court under principle of res judicata." Gupta v. Thai Airways, 487 F.3d 759 (9th Cir. 2007).

By logical extension, the 5th Circuit's Prada opinion confirms the same principle; that, no distiction may be made (certainly not by the Special Master) between registered judgments and rendered judgments. Unless/until the U.S. Supreme Court intervenes and resolves the "circuit-split" that presently exists (on §1963 matters), the Special Master should be held bound by the rules of the federal circuit from which Asemani's claim for compensation originates; the 5th Circuit.

"[A] litigation once pursued to judgment shall be as conclusive of
the rights of the parties in every court as in that where the
judgment was rendered[.  That is] a useful means of ending
litigation by making [] res judicata [] a part of national
jurisprudence." []  Judgments thereby gain nationwide force."
Durfee v Duke, 375 U.S. 106 £1963·.

See also  magnolia v. Hunt, 320 U.S. 430 (1943):

> "Rights judicially established in any part of the nation
> are given nation-wide application."

The Special Master may not be permitted to curtail such rights,
without having a mandate from Congress.

-22-

## RELIEF SOUGHT

WHEREFORE, premises considered, and for the foregoing reasons, Asemani respectfully requests of the Honorabel Court, to:

--Docket/file his complaint;

--Afford him an opportunity to amend his complaint if the Court
   locates any curable flaw in the same;

--Once the case is fully briefed, grant Asemani relief in the form
   of decalring his right to compensation as it realtes to the
   §20144's "U.S. district court final judgment" requisite;

--Instruct the Special Master to entertain a prospective application
   to the Fund, from Asemani, and to declare him eligible for
   compensation on the basis of the final judgment he has from
   the U.S. district Court for the Northern District of Texas; and to

--Grant Asemani any other relief that the Court deems just and
   appropriate.

Respectfully submitted,

JULY 26, 2021

Billy G. Asemani, pro se

## SWORN AFFIDAVIT

I, Billy G. Asemani, the affiant herein, herby attest and certify that all the statements that I have made in this complaint are true to the best of my knowledge, and that the exhibits attached hereto are authentic, true, and accurate.

B.G. Asemani

-23-